IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AGILE ALLIANCE, | |
| Plaintiff, | Case No.: 17-7605 |
| v. | JURY TRIAL DEMANDED |
| AGILE ALLIANCE SOLUTIONS INC. | |
| Defendant. | |

## COMPLAINT

Agile Alliance ("Plaintiff") states as follows for its complaint against Defendant Agile Alliance Solutions Inc. ("Defendant"):

## NATURE OF THE CASE

1. This is an action in law and in equity for service mark infringement and unfair competition arising under the federal Lanham Act, 15 U.S.C. §§ 1051 *et seq.* (the "Lanham Act"), dilution under the Lanham Act 15 U.S.C. § 1125 (c), infringement under Illinois Trademark Registration and Protection Act (765 ILCS 1036/60), dilution under Illinois Trademark Registration and Protection Act (765 ILCS 1036/65), and unfair or deceptive acts under the Illinois Uniform Deceptive Trade Practice Act, 815 ILCS 505, *et seq*.

2. Plaintiff is a member-based, non-for-profit corporation that provides a global set of resources, events, and committees with respect to Agile software development and solutions. Among other services, Plaintiff offers conferences and facilitates initiatives proposed by its members, such as topic-focused workshops and academic research projects. Plaintiff has continually used in commerce its famous, registered and incontestable AGILE ALLIANCE and

AGILE ALLIANCE Logo marks (collectively, the "Marks") in connection with these services since at least as early as 2002.

3. Defendant provides consulting services related to business process optimization, business planning, and analytics under the name "Agile Alliance Solutions" and the name "Agile Alliance Group" (collectively, the "Names") and operates a website at the domain name www.agilealliancesolutions.com (the "Domain Name"). Defendant's Names and Domain Name are confusingly similar to Plaintiff's Marks. Defendant's use of the Names and Domain Name is likely to continue to cause confusion and to deceive consumers and the public, to create a false association between Plaintiff and Defendant and to dilute Plaintiff's Marks.

## PARTIES, JURISDICTION AND VENUE

4. Plaintiff is an Illinois not-for-profit corporation with a principal place of business at 6525 Idumea Road, Corryton, TN 37721.

5. Defendant is a California corporation with a principle place of business at 3532 Pecan St., Irvine, CA 92606 and remote offices at various locations, including in Chicago, Illinois. See Exhibit 1 at pp. 6 (identifying a remote office location in Chicago, IL).

6. Plaintiff's claims are for (i) trademark infringement arising under the Lanham Act, 15 U.S.C. §1125(a), *et seq.*, (ii) false designation and unfair competition arising under the Lanham Act, 15 U.S.C. § 1125(a), *et seq.*, (iii) trademark dilution under the Lanham Act, 15 U.S.C. § 1125 (c), (iv) infringement under Illinois Trademark Registration and Protection Act (765 ILCS 1036/60), (v) dilution under Illinois Trademark Registration and Protection Act (765 ILCS 1036/65), and (iv) unfair or deceptive acts under the Illinois Uniform Deceptive Trade Practice Act, 815 ILCS 505, *et seq*.

2

7. This Court has subject matter jurisdiction over the federal law claims pursuant to Section 39 of the Lanham Act, 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331 and 1338(a). The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because Plaintiff's state law claims arise under the same common nucleus of operative facts that give rise to its federal law claims.

8. This Court has personal jurisdiction over Defendant. On information and belief, Defendant transacts business in this State, has committed tortious acts in this State, derives substantial revenue or engages in a persistent course of conduct in the State and has committed a tortious act outside the State causing injury in the State, and/or has otherwise established contacts within this State making the exercise of personal jurisdiction proper.

9. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b) because Defendant resides within this judicial district pursuant to 28 U.S.C. § 1391(c-d).

## FACTUAL ALLEGATIONS

Plaintiff and its Marks

10. In February 2001, a group of seventeen people gathered in Snowbird, Utah and crafted the Manifesto for Agile Software Development (the "Manifesto"). The Manifesto's authors agreed that software development was due for a paradigm shift away from the documentation-driven software development processes which were then the prevailing standards. The authors to the Manifesto found value in individuals and interactions over processes and tools, working software over comprehensive documentation, customer collaboration over contract negotiation, and responding to a change over following a plan.

11. The Manifesto is based on twelve principles (the "Twelve Principles"), which are at the core of what has become known as Agile software development:

Our highest priority is to satisfy the customer through early and continuous delivery of valuable software.

Welcome changing requirements, even late in development. Agile processes harness change for the customer's competitive advantage.

Deliver working software frequently, from a couple of weeks to a couple of months, with a preference to the shorter timescale.

Business people and developers must work together daily throughout the project.

Build projects around motivated individuals. Give them the environment and support they need, and trust them to get the job done.

The most efficient and effective method of conveying information to and within a development team is face-to-face conversation.

Working software is the primary measure of progress.

Agile processes promote sustainable development. The sponsors, developers, and users should be able to maintain a constant pace indefinitely.

Continuous attention to technical excellence and good design enhances agility.

Simplicity--the art of maximizing the amount of work not done--is essential.

The best architectures, requirements, and designs emerge from self-organizing teams.

At regular intervals, the team reflects on how to become more effective, then tunes and adjusts its behavior accordingly.

12. Later in 2001, some of the authors of the Manifesto, as well as some additional people, formed Plaintiff, Agile Alliance, as a nonprofit organization for the purpose of disseminating information regarding Agile software development. Plaintiff promotes the Manifesto, including the Twelve Principles, and operates through member initiatives to advance the state of Agile programming practices.

13. Plaintiff is operated as a member-based not-for-profit corporation, with diverse companies such as Lockheed Marin, Hewlett-Packard, CapitalOne, Accenture, and Booz Allen

among its many corporate members. Plaintiff currently has a membership and subscriber base of over 65,000 corporations and individuals.

14. Since June of 2002, Plaintiff has continuously been providing educational and other services under the Marks, including conducting classes, seminars, conferences and workshops related to Agile software development, and has heavily promoted the same. By virtue of such extensive promotion and use, the Marks have become famous among relevant consumers, software developers, and businesses.

15. Plaintiff operates worldwide, with members from countries throughout the world and official affiliates in Brazil and New Zealand. In 2019 alone, the Alliance has hosted conferences in Washington D.C., Nashville, Tennessee, Belo Horizonte, Brazil, and Bengaluru, India, as well as online.

16. Plaintiff has duly registered its Marks with the United States Patent and Trademark Office ("USPTO"). Plaintiff owns a service mark for AGILE ALLIANCE, Reg. No. 3087384 for the following services: "Education services, namely, conducting classes seminars, conferences and workshops relating to software design and development and project management using specific agile methods, processes, and environment." A copy of the registration certificate for U.S. Reg. No. 3087384 is attached as Exhibit 2.

17. On May 5, 2011, Plaintiff filed with the USPTO an affidavit of incontestability for AGILE ALLIANCE mark under Section 15 of the Lanham Act, 15 U.S.C. § 1065, which was acknowledged and accepted on June 4, 2011.

18. Plaintiff also owns a registration in the USPTO for its AGILE ALLIANCE Logo service mark, Reg. No. 4532470, for the following services: "Education services, namely,

5

developing, arranging and conducting educational conferences, seminars, workshops, and classes in the fields of software design, software development, and project management, and distribution of course materials therewith; education services, namely, developing arranging and conducting educational conferences and workshops featuring use and promotion of agile methods and processes in the fields of software design, software development, and project management; providing a website featuring blogs and non-downloadable publications in the nature of articles and newsletters featuring the use of agile methodologies in the fields of software design, software development, and project management." A copy of the registration certificate for U.S. Reg. No. 4532470 is attached as Exhibit 3. The registered Agile Alliance Logo mark is shown below:



19. On August 26, 2019, Plaintiff filed with the USPTO an affidavit of incontestability for AGILE ALLIANCE Logo mark under Section 15 of the Lanham Act, 15 U.S.C. § 1065.

20. The Marks have been used in commerce by the Alliance continuously since at least as early as 2002 and, by virtue of such use, have achieved significant fame and public recognition in connection with Plaintiff's services. Because of this widespread, conspicuous and consistent use, the Marks have tremendous power as source identifiers.

21. Plaintiff does not claim to own exclusive rights in the term "Agile" separate and apart from the name AGILE ALLIANCE, even as used in connection with goods/or services

related to Agile Software Development. Nonetheless, the AGILE ALLIANCE and AGILE ALLIANCE Logo service marks became distinctive of the services offered by Plaintiff long before Defendant's activities described in the Complaint and the Marks continue to serve as indicators of source of services provided by or affiliated with Plaintiff's organization and among its many members.

Defendant's Unlawful Activities

22. Defendant uses the name *Agile Alliance Solutions*, the name *Agile Alliance Group* and the domain name *agilealliancesolutions.com* in connection with consultancy services related to business process optimization, business planning, and analytics. Despite representations to Plaintiff, that Defendant would change the name of its business, it continues to use the Names, causing a likelihood of confusion and deception to consumers and diluting the Marks.

23. Upon information and belief, Defendant was formed in August of 2013. Since approximately that time, Defendant has operated a website at the Domain Name. Both Defendant's Names and Domain Name contain the AGILE ALLIANCE Mark in its entirety.

24. On information and belief, Defendant's use of the Names and Domain Name began in or around August of 2013.

25. On information and belief, Defendant provides consultancy services related to business process optimization, business planning and analytics. According to its website, "Agile Alliance Solutions is a specialist in Enterprise Planning Management (EPM), ERP, Business Intelligence, Analytics, and RPA consultancy."

7

26. Defendant promotes itself, including without limitation through its website and Twitter account at @AgileTweetMe, as being able to deliver "intuitive, user-friendly information systems" and solutions that are "enabled by technologies from across the SAP portfolio, Host Analytics enterprise cloud offerings, Tableau, and beyond." Exhibit 1, Defendant's Website at pp. 2-3.

27. On information and belief, Defendant promotes itself to consumers as basing its consultancy services on the principles within the Agile Manifesto.

28. Defendant is not consistent with its use of the term "Solutions" when referring to itself on its website and otherwise. For example, each page of Defendant's website is marked with the copyright notice "© Copyright 2015. All Rights Reserved by Agile Alliance Group." See Exhibit 1.

29. Further, Defendant's website content recently changed, particularly with respect to the way Defendant is described to consumers. Exhibit 4 is a printout of a portion of the Defendant's website as it existed on December 7, 2018, as captured by the Wayback Machine (www.internetarchive.org).

30. As demonstrated by Exhibit 4, Defendant's website previously referred to Defendant as "Agile Alliance" throughout its website, without the modifier "Solutions." See Exhibit 4, December 7, 2018 Capture via InternetArchive.org ("Agile Alliance is a specialist…", The "Agile Alliance team of industry consultants…")

31. Purchasers and prospective purchasers viewing Defendant's use of the Agile Alliance Solutions and Agile Alliance Group names and the Domain Name are likely to be confused as to the source of services or as to any affiliation between the Plaintiff and Defendant

8

or sponsorship of Defendant by the Plaintiff. Moreover, purchasers perceiving a lack of quality in the services provided or any impropriety or lack of customer service by Defendants are likely to mistakenly attribute them to the Plaintiff. By causing such a likelihood of confusion, mistake and deception, Defendants are inflicting harm on the goodwill associated with the Plaintiff's Marks.

32. On information and belief, Defendant has been aware of Plaintiff, its prior use of the Marks and the fame of the Marks since Defendant's formation and is willfully and intentionally using the "*Agile Alliance Solutions*" and "*Agile Alliance Group*" names and the Domain Name to cause inevitable confusion among consumers and to trade upon the Plaintiff's reputation and goodwill of the Marks.

Plaintiff's Demand Letter and Defendant's Continued Infringement

33. In early 2019, Plaintiff became aware of Defendant and the fact that it utilized the AGILE ALLIANCE mark to promote its consultancy services.

34. On March 28, 2019, Plaintiff's attorney contacted Defendant's President, Somar Bhangay, via letter, which is attached as Exhibit 5. This letter notified Defendant of Plaintiff's contention that Defendant's Names and Domain Name infringed upon the AGILE ALLIANCE and AGILE ALLIANCE Logo marks and demanded that the Defendant "cease all use [of] the name 'AGILE ALLIANCE' including the names 'Agile Alliance Solutions' and 'Agile Alliance Group' or any name or mark confusingly similar to 'AGILE ALLIANCE' and the Domain Name."

35. On April 22, 2019, Mr. Bhangay emailed Plaintiff's counsel acknowledging receipt of the Plaintiff's letter and agreed to change Defendant's name within 30 days thereof.

9

Exhibit 6 is a copy of Mr. Bhangay's email, which represents that Defendant was "working on it and [the name] should be changed in next 30 days."

36. Contrary to this representation to Plaintiff, Defendant has not changed its corporate name, any website content, branding, or its domain name. Instead, Defendant continues to operate the website at the Domain Name and promote its services under the names "Agile Alliance Solutions" and the "Agile Alliance Group." The only relevant changes to Defendant's website has been a change to website content to, at times, refer to itself as "Agile Alliance Solutions" in lieu of "Agile Alliance" and to add a "disclaimer" at the bottom of the "About" page of the website that reads: "Disclaimer: We are not associated with Agile Alliance, a global nonprofit organization dedicated to promoting the concepts of Agile software development." See Exhibit 1 at pp. 3.

37. The newly-added disclaimer is insufficient to dispel consumer confusion caused by Defendant's use of the Mark and, conversely, is likely to cause greater consumer confusion. Moreover, the newly-added disclaimer is further evidence of Defendant's willful and intentional infringement.

## COUNT I
## FEDERAL SERVICE MARK INFRINGEMENT

38. Plaintiff re-alleges and incorporates herein by reference paragraphs 1-37 above.

39. Defendant is using confusingly similar imitations of the Marks in connection with unlicensed and unauthorized services. This conduct is likely to cause confusion, deception and mistake by creating the false and misleading impression that Defendant's unlicensed and unauthorized services are provided by, associated with, or connected with Plaintiff or have the sponsorship, endorsement or approval of Plaintiff.

40. Defendant is using confusingly similar imitations of the federally registered AGILE ALLIANCE mark and AGILE ALLIANCE Logo mark in violation of 15 U.S.C. § 1114, and Defendant's activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion of members of the trade and public and, additionally, injury to Plaintiff's goodwill and reputation, for which it has no adequate remedy at law.

41. Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff's AGILE ALLIANCE Marks to its significant and irreparable injury.

42. Defendant has caused and is likely to continue causing injury to the public and the Plaintiff. As such, Plaintiff is entitled to injunctive relief, its actual damages, an accounting of Defendant's profits, and reasonable attorney fees under 15 U.S.C. §§ 1116 and 1117.

## COUNT II
## FEDERAL UNFAIR COMPETITION

43. Plaintiff re-alleges and incorporates herein by reference paragraphs 1-42 above.

44. Defendant's conduct has caused and is likely to cause confusion, deception and mistake by creating the false and misleading impression that Defendant's services are provided by, affiliated with or connected with the Plaintiff or have its sponsorship, endorsement or approval.

45. Defendant has made false representations, false descriptions, and false designations of origin of their services in violation of 15 U.S.C. § 1125(a), and Defendant's activities have caused, and unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public and, additionally, injury to the Plaintiff's goodwill and reputation to its substantial and irreparable injury.

11

46. Defendant's conduct has caused and is likely to continue causing injury to the public and to Plaintiff. As such, Plaintiff is entitled to injunctive relief, its actual damages, and accounting of Defendant's profits, and reasonable attorney fees under 15 U.S.C. §§ 1116 and 1117.

## COUNT III
## FEDERAL DILUTION

47. The Plaintiff re-alleges and incorporates herein by reference paragraphs 1-46 above.

48. The AGILE ALLIANCE Marks have been in continuous use since at least 2002 and have achieved widespread public recognition in the United States and globally.

49. The AGILE ALLIANCE Marks are famous within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

50. Defendant's commercial use of the "*Agile Alliance Solutions*" name, the "*Agile Alliance Group*" name, and the Domain Name are likely to dilute the distinctiveness of the Marks by eroding the public's exclusive identification of these famous marks with Plaintiff's services, tarnishing and degrading the positive associations and prestigious connotations of the Marks, and otherwise lessening the capacity of the Marks to identify and distinguish products and services belonging to the Plaintiff. Defendant's actions have or are likely to undermine and damage the valuable goodwill associated with the famous AGILE ALLIANCE and AGILE ALLIANCE Logo marks.

51. Defendant's acts, as alleged herein, are intentional and willful in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), and will, unless enjoined, damage the Plaintiff, which has no adequate remedy at law. As such, Plaintiff is entitled to injunctive relief,

its actual damages, and accounting of Defendant's profits, and reasonable attorney fees under 15 U.S.C. §§ 1116 and 1117.

## COUNT IV
## INFRINGEMENT UNDER ILLINOIS LAW

52. The Plaintiff re-alleges and incorporates herein by reference paragraphs 1-51 above.

53. Defendant is using confusingly similar imitations of the Marks in connection with unlicensed and unauthorized services. This conduct is likely to cause confusion, deception and mistake by creating the false and misleading impression that Defendant's unlicensed and unauthorized services are provided by, associated with, or connected with Plaintiff or have the sponsorship, endorsement or approval of Plaintiff.

54. Defendant is using confusingly similar imitations of the federally registered AGILE ALLIANCE mark and AGILE ALLIANCE Logo mark in violation of 765 ILCS 1036/60, and Defendant's activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion of members of the trade and public and, additionally, injury to Plaintiff's goodwill and reputation, for which it has no adequate remedy at law.

55. Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff's AGILE ALLIANCE Marks to its significant and irreparable injury.

**COUNT V**
**DILUTION UNDER ILLINOIS LAW**

56. The Plaintiff re-alleges and incorporates herein by reference paragraphs 1-55 above.

57. The AGILE ALLIANCE Marks have been in continuous use since at least 2002 and have achieved widespread public recognition in Illinois, the United States and globally.

58. The AGILE ALLIANCE Marks are famous within the meaning of 765 ILCS 1036/65.

59. Defendant adopted its "*Agile Alliance Solutions*" and "*Agile Alliance Group*" names and the Domain Name after the Marks had become famous. Defendant's commercial use of the Names and Domain Name are likely to dilute the distinctiveness of the Marks by eroding the public's exclusive identification of these famous marks with Plaintiff's services, tarnishing and degrading the positive associations and prestigious connotations of the Marks, and otherwise lessening the capacity of the Marks to identify and distinguish Plaintiff's products and services. Defendant's actions have or are likely to undermine and damage the valuable goodwill associated with the famous AGILE ALLIANCE and AGILE ALLIANCE Logo marks.

60. Defendant willfully intended to trade on Plaintiff's reputation and/or intentionally sought to dilute Plaintiff's Marks and has done so to Plaintiff's significant and irreparable injury.

**COUNT VI**
**DECEPTIVE TRADE PRACTICES UNDER ILLINOIS LAW**

61. The Plaintiff re-alleges and incorporates herein by reference paragraphs 1-60 above.

62. Defendant's use of the "*Agile Alliance Solutions*" name, the "*Agile Alliance Group*" name, and the Domain Name in connection with its unlicensed and unauthorized services is likely to cause to cause confusion or misunderstanding as to the source, sponsorship, approval or certification of the products and services or likely to cause confusion or misunderstanding as to the affiliation or association with, or certification by thePlaintiff.

63. Defendant's deceptive acts or practices injured and continue to injure the Plaintiff and the public.

64. Defendant's actions offend the public, are willful, unethical, oppressive and unscrupulous, affecting trade and commerce now and in the future both within the state of Illinois and elsewhere.

65. A causal link exists between the deceptive acts and the resulting injury.

66. The Plaintiff has suffered damages, as discussed above, relating to violation of the Uniform Deceptive Trade Practices Act 815 ILCS 510/1 by Defendant.

67. The Plaintiff seeks, and is entitled to recover, its actual damages, together with the costs of suit, including reasonable attorneys' fees.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff prays that:

A. Judgment be entered against the Defendant on all of Plaintiff's claims.

B. Defendant be adjudicated and decreed to have infringed Plaintiff's service mark rights in the AGILE ALLIANCE and AGILE ALLIANCE Logo marks.

C. Defendant be adjudicated and decreed to have created a false association with the Plaintiff.

D. Defendant be adjudicated and decreed to have diluted the AGILE ALLIANCE and AGILE ALLIANCE Logo marks.

15

E. The Court issue preliminary and permanent injunctions enjoining and prohibiting Defendant and its representatives, officers, directors, agents, servants, employees, attorneys, successors, assigns and any and all persons in active concert with them from any advertising, promoting, marketing, selling, offering for sale, distributing or other activity using the AGILE ALLIANCE and AGILE ALLIANCE Logo marks or any colorable imitation thereof, including without limitation the "Agile Alliance Solutions" name, the "Agile Alliance Group" name, and the Domain Name.

F. Defendant be adjudged and decreed to have violated the Lanham Act, the Illinois Trademark Registration and Protection Act, the Uniform Deceptive Trade Practices Act and to have committed acts of unfair competition against Plaintiff arising out of Defendant's use of the "Agile Alliance Solutions" name, the "Agile Alliance Group" name, and the Domain Name.

G. The Court order an award of attorneys' fees and costs against Defendant as provided by 15 U.S.C. § 1117(a), 765 ILCS 1036/70 and 815 ILCS 510/2.

H. The Court order an award for damages suffered by Plaintiff, plus any revenues or profits earned by Defendant as a result of Defendant's trademark infringement, unfair competition and false advertising in an amount to be proven at trial.

I. The Court issue a judgment awarding treble damages against Defendant as provided by 15 U.S.C. § 1117(a) and 765 ULCS 1036/70.

J. The Court award Plaintiff such other and further relief as this Court deems just and proper under the circumstances.

                                    Respectfully submitted,

Dated: November 18, 2019         /s/ Jeffrey J. Catalano
                                    Jeffrey J. Catalano
                                    One of the Attorneys for Plaintiff

Jeffrey J. Catalano
FREEBORN AND PETERS LLP
311 S. Wacker Dr., Suite 3000
Chicago, Illinois 60606
Phone: (312) 360-6000
Email: jcatalano@freeborn.com